# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

—o0o—

| | |
|---|---|
| DANNY MADRID, | 1:04-CV-06620 LJO JMD (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| K. MENDOZA-POWERS, Warden, et al., | [Doc #1] |
| Respondents. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This action has been referred to this court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72-302.

## BACKGROUND[1]

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Orange, following his conviction by

---

[1] This information is derived from the petition for writ of habeas corpus, the exhibits attached to the petition, Respondent's answer to the petition, and the exhibits lodged with the answer.

1  jury trial on February 26, 1982, of murder, attempted murder, and attempted robbery.  See
2  Answer, Exh. A (Abstract of Judgment).  Petitioner was sentenced to a total indeterminate term
3  of fifteen years to life with the possibility of parole.  Id.
4        On May 12, 2003, an eight parole suitability hearing was held by the California Board of
5  Prison Terms (hereinafter "Board") at Avenal State Prison.  See Answer, Exh. C (hearing
6  transcript).  Petitioner attended the hearing and was represented by counsel.  Id.  At the
7  conclusion of the hearing, the Board denied parole and deferred rehearing for one year.  Id. at 80.
8        Subsequently Petitioner filed a petition for writ of habeas corpus in the King County
9  Superior Court challenging the decision of the Board.  The King County Superior Court denied
10 the petition on April 29, 2004.  See Answer, Exh. F.  The Superior Court held that there was
11 "some evidence" supporting the Board's denial of parole.  It found the Board appropriately
12 considered the statements of the District attorney in issuing its denial, and that parole could be
13 denied on the basis of the nature of the crime itself.  Id.
14       Petitioner thereafter filed a petition for writ of habeas corpus in the California Court of
15 Appeals, Fifth Appellate District.  See Answer, Exh. I.  The petition was summarily denied.  Id.
16 Petitioner then filed a petition for review in the California Supreme Court.  See Answer, Exh. J.
17 The California Supreme Court denied the petition without comment or citation to authority.  Id.
18       On November 30, 2004, Petitioner filed the instant petition for writ of habeas corpus in
19 this Court.  The petition for writ of habeas corpus does not challenge the underlying conviction;
20 rather, it challenges the May 12, 2003 decision of the California Board of Prison Terms denying
21 parole for an eighth time.  Petitioner claims the Board arbitrarily and unreasonably denied parole
22 without any evidence in violation of his constitutional rights.
23       On May 19, 2005, Respondent filed an answer to the petition.  Petitioner filed a traverse
24 on June 03, 2005, and filed a Notice of Additional Authorities in Support of his Petition on
25 September 04, 2007.

26       **FACTUAL BACKGROUND**
27       In the early morning of February 28, 1991, Mr. Villa and two companions, Vincent
28 Ocampo and Juan Jorge Avila Mura, were driving around in Villa's vehicle looking for an open

1  liquor store.  Meanwhile, three males, later identified as Dorman Hamlin, Richard Moses and the
2  victim, were observed hitchhiking.  Mr. Villa and his two companions approached the three
3  individuals.  Petitioner, along with two companions identified as Frank Vasquez and Nicholas
4  Rodriguez, were driving around in Petitioner's vehicle.  They approached the three hitchhikers
5  around the same time as Villa did.  Both drivers, Petitioner and Villa, offered the hitchhikers a
6  ride.  One man rode with Villa and his companions.  The victim and the other rode with
7  Petitioner and his companions.  Both parties proceeded to one of the hitchiker's homes.
8  Petitioner followed Villa.  Both vehicles approahced a dead end street.  Villa and Petitioner
9  exited their vehicles and began arguing about their destination.  The prisoner stabbed Villa two
10 times in his left arm and four times on the left side of his chest.  Madrid then got back into his
11 car.  The hitchhiker who was driving with Villa got into Petitioner's car.  Now all three
12 hitchhikers were with Petitioner in his vehicle.  Villa was put in his vehicle by his companions
13 and they drove away to a nearby hospital.

14      Petitioner and his companions departed the scene.  Subsequently, the vehicle belonging to
15 Mr. Villa collided with that driven by Petitioner.  Villa and his companions proceeded to the
16 hospital.  Petitioner stopped his vehicle.  Hamlin and Moses exited the vehicle.  Hamlin and
17 Moses left the area after a possible argument with Petitioner.  The victim was passed out in the
18 back seat of Petitioner's vehicle at the time.  When the victim's companions returned, they found
19 him laying in the street stabbed to death.  His wallet was found without money a short distance
20 away.  Petitioner and his two companions were stopped by the Santa Ana Police Department near
21 the scene of the crime, approximately one hour after the life crime.

## DISCUSSION

I.  **Standard of Review**

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act
of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its
enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries
v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th
Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy,

521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at

72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

II. **Review of Petitioner's Claim**

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural

1  protections that particular situations demand). "[S]ince the setting of a minimum term is not part
2  of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not
3  constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at
4  1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole
5  board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive
6  advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an
7  "opportunity to be heard," Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the
8  inmate must be told why "he falls short of qualifying for parole," Id.

9  "In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court further held that
10 'revocation of good time does not comport with 'the minium requirements of procedural due
11 process,' unless the findings of the prison disciplinary board are supported by *some evidence* in
12 the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)."
13 Sass v. California Board of Prison Terms, 461 F.3d 1123, at 1128 (9th Cir. 2006) (emphasis
14 added). Although Hill involved the accumulation of good time credits, the same standard applies
15 to parole, as both situations "directly affect the duration of the prison term." Id., *citing* Jancsek
16 v. Oregon Bd. of Parole, 833 F.2d at 1390; McQuillion v. Duncan, 306 F.3d 895, 905 (9th Cir.
17 2002), *citing* Superintendent v. Hill, 472 U.S. at 456; Powell v. Gomez, 33 F.3d 39, 40 (9th Cir.
18 1994), *citing* Perveler v. Estelle, 974 F.2d 1132, 1134 (9th Cir. 1992). "The 'some evidence'
19 standard is minimally stringent." and a decision will be upheld if there is any evidence in the
20 record that could support the conclusion reached by the factfinder. Powell, 33 F.3d at 40,
21 *citing* Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987); Toussaint v. McCarthy, 801 F.2d 1080,
22 1105 (9th Cir. 1986). However, "the evidence underlying the board's decision must have some
23 indicia of reliability." Jancesk, 833 F.2d at 1390; see also Perveler, 974 F.2d at 1134. In
24 determining whether the "some evidence" standard is met, the Court need not examine the entire
25 record, independently assess the credibility of witnesses, or re-weigh the evidence. Sass, 461
26 F.3d at 1128, Toussaint, 801 F.2d at 1105.

27 With regard to the procedural protections outlined in Greenholtz, Petitioner does not
28 challenge the procedural sufficiency of his parole suitability hearing. See Traverse at 8.

1  Petitioner, however, contends the Board's decision was not supported by the evidence. After
2  reviewing all relevant evidence, the Court finds that the state court rejection of Petitioner's claim
3  was not unreasonable, because the Board's decision is supported by "some evidence."
4        The first and most important factor in the Board's determination was the commitment
5  offense itself. The Board determined that the offense was carried out in an especially atrocious
6  and heinous manner under 15 C.C.R. § 2401©.[2] In support of its determination, the Board found
7  that the offense was "carried out in a manner that shows a lack of regard for the life and suffering
8  of another." Answer, Exh. C at 79. This is supported by the record. Petitioner kicked and then
9  stabbed an unconscious man in the chest multiple times. The Board further noted that this
10 incident followed another incident where Petitioner stabbed a different victim. Additionally, the
11 Board found the motive for the crime was inexplicable. Both findings are amply supported by
12 the record. Petitioner admits to the stabbing of Mr. Villa in addition to that of the murder victim,
13 Mr. Rieves. And Petitioner admits his motive for the stabbing was inexplicable. See, e.g.,
14 Answer Exh. C at 23. The Board's finding that the offense was carried out in an especially
15 atrocious and heinous manner is thus supported by some evidence.
16       This is, however, Petitioner's eighth parole eligibility hearing. At the time of the
17 hearing, Petitioner had been incarcerated in state prison for twenty-one years, eleven years past
18 his initial parole consideration hearing. As the Ninth Circuit states, "a continued reliance in the
19 future on an unchanging factor, the circumstances of the offense and conduct prior to
20 imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could
21 result in a due process violation." Biggs v. Terhune, 334 F.3d at 917 (9th Cir. 2003); see also

---

[2] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c)(1) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
    (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
    (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
    © The victim was abused, defiled or mutilated during or after the offense.
    (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
    (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

Irons v. Carey, \_\_\_ F.3d\_\_\_, WL 2027359 *5 (9th Cir. 2007) (Over time, "should [the prisoner] continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of [his] offense and prior conduct would raise serious questions involving his liberty interest in parole."). We believe that at this point the Board's unsuitability determination must be supported by evidence beyond the immutable characteristics of the crime itself and Petitioner's prior conduct. That said, the Court turns to the other evidence relied upon by the Board to support it's finding of unsuitability.

In addition to the commitment offense, the Board noted the in-person opposition of the District Attorney and the written opposition of the Santa Ana Sheriff's Department weighed against suitability. Cal. Penal Code § 3042(f)(3) provides the Board "shall review and consider all information received from the judge or any other person and shall consider adjusting the terms or conditions of parole to reflect the comments or concerns raised by this information, as appropriate." Therefore the Board properly considered the arguments of the district attorney and written statement of the Santa Ana Sheriff's office n determining Petitioner continued to pose a threat to public safety if released on parole.[3]

Additionally, the Board found Petitioner unsuitable for parole due to a lack of sufficient programming. However, as the Board itself notes, Petitioner has performed admirably as an inmate. Petitioner earned his GED in 1986, shortly after his incarceration. Petitioner's record is free of disciplinary actions for thirteen years preceding the date of the parole hearing. He completed vocational training in electronics and separate correspondence courses in electronics and small business management. He received laudatory "chronos" and above average to exceptional work reports from his supervisors in the prison laundry. Consistent with the recommendations of a previous Parole Board, Petitioner sought psychotherapy, which was refused him due to his lack of mental health issues. Petitioner's psychological report indicates that Petitioner has bettered himself while in prison, participated in self-help groups, and

---

[3] To the extent the oppositions of the District Attorney and Sheriff's Office focus on the nature of the crime and/or Petitioner's conduct prior to the crime, the Court notes that continued reliance on these oppositions is potentially problematic under Biggs.

continued his involvement in Alcoholics Anonymous, Petition, Exh. H.  Addressing Petitioner's dangerousness, the report indicates:

> If released to the community, inmate should not present a problem to society.  It is this examiner's impression that during institutionalization this inmate has matured constructively and that in a less controlled setting, such as a return to the community, he is likely to hold present gains and continue self-improvement, in that he appears to have adequate impulse control and should be capable of controlling any anger or aggressive impulses.  Significant risk factors and precursors to violence are considered to be less than average in comparison to other inmates.

Answer, Exh. C at 56-57.

Petitioner's Counselor's Report prepared for the hearing further documents Petitioner's therapy and self-help activities.  The report indicates that Petitioner "has programmed at a good to exceptional level," that Petitioner "has the necessary family and social support for positive reentry into society," that Petitioner "has matured considerably since being received," and that he has "conformed to the rules, regulations, and policies of the institution...in an exceptional manner that would pose a low to moderate degree of threat to the public at this time."  Answer, Exh. C at 53-54.  The report ends by noting that Petitioner is "chanceful of successfully reentering society as a useful citizen if paroled."  Id. at 55.

In finding lack of sufficient programming, the Board focuses on the "low to moderate" language in the counselor's report.  See Answer, Exh. C at 82 ("It would be nice to see the counselor say either a low threat or no threat.  Throwing that moderate in there is the problem."). The Court finds that given Petitioner's overall laudatory performance while incarcerated, as well as  the other language both in the Counselor's and Psychologist's reports indicating that Petitioner had programmed well and was "chanceful of successfully reentering society as a useful citizen," the use of the phrase "low to moderate" to describe Petitioner's threat to society does not provide "some evidence" in support of the Board's finding of lack of sufficient programming.

Finally, in issuing its denial the Board indicated that it was troubled by certain inconsistencies in Petitioner's explanation for the crimes.  Answer, Exh. C at 79-80. Specifically, the Board felt that Petitioner had on previous hearings taken a greater amount of responsibility for the attempted robbery.  Id. at 80 (noting that in previous hearings Petitioner had indicated "we tried to rob..." while in the current hearing he indicated that he was not aware that

1  his crime partners had taken the victim's wallet).  These findings are supported by the record.
2  Petitioner rightly asserts that he has accepted responsibility and expressed remorse.  Id. at 26;
3  Petition, Exh. H at 4 (Prisoner's Psychological Evaluation); Id., Exh. I at 2 (Counselor's
4  Evaluation).  However, the context of this acceptance of responsibility is the killing of victim
5  Rieves and wounding of victim Villa, not the attempted robbery.  While minor in comparison to
6  his acceptance of responsibility for murder and attempted murder, Petitioner's inconsistent
7  statements regarding the attempted robbery are nonetheless "some evidence" in support of the
8  Board's finding of unsuitability.
9       In conclusion, we find that although the evidence outside of the facts of the crime itself is
10 minimal, there is nonetheless "some evidence" supporting the Board's determination to deny
11 Petitioner parole.  Accordingly, Petitioner's due process rights were not violated and the petition
12 should be denied.

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and
2. Judgment be ENTERED in favor of Respondent.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(c). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

///

1 | IT IS SO ORDERED.

2 | **Dated:   January 15, 2008**          /s/ **John M. Dixon**
                                          UNITED STATES MAGISTRATE JUDGE